# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIKE'S NOVELTIES, INC., | Case No. 1:23-cv-01309-JLT-SAB |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS RECOMMENDING GRANTING PLAINTIFF'S MOTION TO DISMISS DEFENDANT'S COUNTERCLAIMS WITH LEAVE TO AMEND |
| v. | |
| PIV ENTERPRISES, INC., | |
| Defendant. | (ECF Nos. 8, 13, 14) |
| | **OBJECTIONS DUE WITHIN FOURTEEN DAYS** |

## I.

## INTRODUCTION

Currently before the Court is Plaintiff Mike's Novelties, Inc.'s motion to dismiss Defendant PIV Enterprises, Inc.'s first and second counterclaims in its first amended counterclaim pursuant to Federal Rule of Civil Procedure 12(b)(6). Based on the moving, opposition, and reply papers, the information presented by counsel at the hearing held on January 17, 2024, and the Court's record, the Court recommends granting Plaintiff's motion to dismiss with leave to amend.

///

///

///

1

## II.

## BACKGROUND

Defendant PIV Enterprises, Inc. ("PIV") develops, manufactures, and sells ingestible detox, cleansing, and lifestyle products.  (ECF No. 7 ("Am. Countercompl.") ¶ 7.)  PIV owns two federally registered trademarks for the phrase "Magnum Detox" and its stylized logo for use in connection with mouth wash in international class 003.  (Id. ¶¶ 8-9).  On September 6, 2016, PIV was issued U.S. Trademark Registration Number 5,034,069 ("the '069 Mark") for the standard character mark "Magnum Detox."  (Id. ¶ 8.)  On October 3, 2017, PIV was issued U.S. Trademark Registration Number 5,298,938 ("the '938 Mark") for a stylized "Magnum Detox" mark whereby the capitalized word "detox" is positioned below and between the two "M's" in the capitalized word "Magnum."  (Id. ¶¶ 9-10.)

Since 2005, PIV has been developing, manufacturing, and selling various detox products bearing the '069 and '938 Marks (collectively, "Magnum Detox Marks").  (Id. ¶¶ 14, 16.)  PIV alleges its Magnum Detox products, including a saliva-cleansing mouth wash and synthetic urine, are used by consumers to provide clean samples for tests for substances.  (Id. ¶¶ 20, 36.)  PIV alleges it has gained a significant amount of goodwill in the Magnum Detox Marks and consumers recognize the Marks as being associated with safe, high-quality products.  (Id. ¶ 16.)

From approximately 2005 to 2017, MNI and PIV had a business relationship, wherein MNI distributed PIV's Magnum Detox products, including PIV's synthetic urine bearing the Magnum Detox Marks.  (Id. ¶¶ 17-18.)  Although MNI has not purchased any synthetic urine from PIV since approximately 2017, PIV alleges MNI is now manufacturing, distributing, and/or selling a counterfeit synthetic urine product bearing the Magnum Detox Marks.  (Id. ¶¶ 19-20.)  Further, PIV alleges that MNI's synthetic urine packaging lists PIV's website and phone number for customers to contact for questions.  (Id. ¶¶ 22-23.)  PIV alleges it has received calls and inquiries from confused customers who have purchased MNI's synthetic urine bearing the Magnum Detox Marks.  (Id. ¶ 26.)

On August 21, 2023, PIV sent a letter to MNI demanding that MNI cease and desist from the sale of MNI's unauthorized synthetic urine bearing the Magnum Detox Marks.  (Pl.'s Mot.

1   Dismiss ("Mot."), ECF No. 8 at 3.)   In response, MNI filed its own complaint in this action on

2   September 1, 2023, seeking declaratory judgment of non-infringement and non-counterfeiting of

3   trademark, as well as declaratory judgment that PIV's two trademark registrations are invalid due

4   to non-use or abandonment.  (See ECF No. 1.)  On November 6, 2023, PIV filed an answer and

5   five counterclaims against MNI arising from PIV's alleged trademark infringement and unfair

6   business practices.  (ECF No. 6.)  On November 20, 2023, PIV filed its first amended answer and

7   countercomplaint.  (See Am. Countercompl.)

8        On December 4, 2023, MNI filed a motion to dismiss PIV's first and second amended

9   counterclaims for federal trademark infringement and false designation of origin.  (See Mot.)

10  MNI does not move to dismiss PIV's third, fourth, or fifth counterclaims for California statutory

11  trademark infringement, common law unfair competition, or unfair competition under California

12  Business and Professions Code § 17200.  On December 15, 2023, PIV filed an opposition to

13  MNI's motion to dismiss.  (Def.'s Opp'n ("Opp'n"), ECF No. 7.)  On December 22, 2023, MNI

14  filed a reply to PIV's opposition.  (Pl.'s Reply ("Reply"), ECF No. 8.)

15       The Court held a hearing on the matter on January 17, 2024.  (ECF No. 15.)  Louis Teran

16  appeared via video on behalf of MNI and Byron Ma appeared via video on behalf of PIV.  The

17  Court took the matter under submission.

18                                          **III.**

19                                   **LEGAL STANDARD**

20       When considering a motion to dismiss a counterclaim under Federal Rule of Civil

21  Procedure ("Rule") 12(b)(6), the court uses the same standard as that for dismissal of a Plaintiff's

22  complaint.  California Dep't of Toxic Substances Control v. Jim Dobbas, Inc., No. 2:14-CV-

23  00595-WBS-EFB, 2023 WL 4871717, at *1 (E.D. Cal. July 31, 2023).  Under Rule 12(b)(6), a

24  party may file a motion to dismiss on the grounds that a complaint "fail[s] to state a claim upon

25  which relief can be granted."  A motion to dismiss pursuant to Rule 12(b)(6) tests the legal

26  sufficiency of the claim.  Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001).  In deciding a

27  motion to dismiss, "[a]ll allegations of material fact are taken as true and construed in the light

28  most favorable to the nonmoving party."  Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337–38

1   (9th Cir. 1996).   The pleading standard under Rule 8 does not require "'detailed factual

2   allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me

3   accusation."   Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v.

4   Twombly, 550 U.S. 544, 555 (2007)).   In assessing the sufficiency of a complaint, all well-

5   pleaded factual allegations must be accepted as true.   Iqbal, 556 U.S. at 678-79.   However,

6   "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

7   statements, do not suffice."   Id. at 678.   To avoid a dismissal under Rule 12(b)(6), a complaint

8   must plead "enough facts to state a claim to relief that is plausible on its face."   Twombly, 550

9   U.S. at 570.

10       In deciding whether a complaint states a claim, the Ninth Circuit has found that two

11   principles apply.   First, to be entitled to the presumption of truth, the allegations "may not simply

12   recite the elements of a cause of action, but must contain sufficient allegations of underlying

13   facts to give fair notice and to enable the opposing party to defend itself effectively."   Starr v.

14   Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).   Second, so that it is not unfair to require the

15   defendant to be subjected to the expenses associated with discovery and continued litigation, the

16   factual allegations of the complaint, which are taken as true, must plausibly suggest an

17   entitlement to relief.   Id.   "Dismissal is proper only where there is no cognizable legal theory or

18   an absence of sufficient facts alleged to support a cognizable legal theory."   Navarro, 250 F.3d at

19   732 (citing Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1988)).

20                                                   **IV.**

21                                            **DISCUSSION**

22       MNI brings this motion to dismiss for failure to sufficiently state counterclaims for

23   federal trademark infringement and false designation of origin.   PIV argues its first counterclaim

24   sufficiently alleges a claim for federal trademark infringement based on MNI's use of PIV's

25   registered Magnum Detox Marks on MNI's synthetic urine, which infringes on PIV's use of the

26   Magnum Detox Marks in connection with its mouth wash.   PIV also avers its second

27   counterclaim sufficiently alleges two claims for federal designation of origin based on MNI's use

28   of the Magnum Detox Marks on MNI's synthetic urine, which infringes on (1) PIV's use of its

registered Magnum Detox Marks in connection with mouth wash and, in the alternative, (2) its common law rights to use the unregistered Magnum Detox marks in connection with all of PIV's detox, lifestyle, and cleansing products.

### A.   PIV's Counterclaim for Federal Trademark Infringement

To prevail on its trademark infringement claim, PIV "must show that: 1) it has a valid, protectable mark, and 2) [MNI's] use of the mark is likely to cause consumer confusion." Applied Info. Scis. Corp. v. eBAY, Inc. ("Applied Info."), 511 F.3d 966, 969 (9th Cir. 2007). The trademark owner "must establish a valid, protectable interest in order to proceed to the second prong of the trademark infringement analysis – the likelihood of confusion resulting from the defendant's alleged infringing use."  Id. at 972.  Because MNI challenges whether PIV sufficiently alleges both elements in its counterclaim, the Court addresses each in turn.

### 1.   Valid Ownership Interest

"The threshold issue in any action for trademark infringement is whether the words used by a manufacturer in connection with his product are entitled to protection." Transgo, Inc. v. Ajac Transmission Parts Corp., 768 F.2d 1001, 1014 (9th Cir. 1985).  "Registration of a mark is prima facie evidence of the validity of the mark, the registrant's ownership of the mark, and the registrant's exclusive right to use the mark in connection with the goods specified in the registration." Pom Wonderful LLC v. Hubbard, 775 F.3d 1118, 1124 (9th Cir. 2014) (citing 15 U.S.C. § 1115(a)).[1]  "When proof of registration is uncontested, the ownership interest element of a trademark infringement claim is met."  Id.  However, there is no presumption of trademark ownership without a federal registration.  See Hanginout, Inc. v. Google, Inc., 54 F. Supp. 3d 1109, 1118 n.7 (S.D. Cal. 2014).

In its sparse motion to dismiss, MNI does not contest that PIV has a valid and protectable interest in the Magnum Detox Marks for use in connection with mouth wash.  Instead, MNI argues that PIV's amended counterclaim improperly relies on its registered Magnum Detox

---

[1] 15 U.S.C. § 1115(a) states in pertinent part that ""Any registration issued ... shall be prima facie evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the registration subject to any conditions or limitations stated therein ....")

Marks for mouth wash in order to meet the threshold element that it has an ownership interest in a valid and protectible trademark in synthetic urine.  (Mot. 5 (citing 15 U.S.C. §§ 1057(b), 1115(a)).)[2]  In response, PIV argues its rights to enforce against MNI's infringing use of the Magnum Detox Marks is not limited to mouth wash.  PIV relies on the Ninth Circuit's decision in Applied Info. Scis. Corp. v. eBAY, Inc., 511 F.3d 966, 969 (9th Cir. 2007); however, MNI argues the instant allegations are more comparable to those in Levi Strauss & Co. v. Blue Bell, Inc., 778 F.2d 1352 (9th Cir. 1985) (en banc).  The Court therefore begins with an overview of both cases, then examines PIV's allegations.

In Levi Strauss & Co. v. Blue Bell, Inc., the plaintiff owned a registered trademark for a design covering pocket tabs on pants but brought a claim alleging trademark infringement for the defendant's use of a pocket tab on shirts.  778 F.2d at 1354.  The plaintiff thus based its trademark infringement claim on a purported trademark right in a pocket tab on all garments.  Id. at 1356.  The Ninth Circuit determined that the plaintiff did not have a right to pocket tabs on clothing generally, noting that the plaintiff could not "extend its *own* use of its registered mark to goods not specified in its federal registration."  Applied Info., 511 F.3d at 972 (summarizing Levi Strauss, 778 F.2d at 1359) (emphasis in original).  The court noted its decision boiled down to how the plaintiff pleaded its case: "Strauss pleaded this case not as an infringement of its tab as applied to the pants market or as applied to the shirt market, but as an infringement of its alleged trademark rights in a pocket tab on garments generally."  Levi Strauss, 778 F.2d at 1359.  The court thus explained that "Strauss cannot simply rely on the federal registration of certain tabs, most notably of those on pants, to establish a protected interest in a pocket tab on garments generally, because registration constitutes prima facie evidence of a protected interest with respect to the goods specified in the registration only."  Id. at 1354 (citing 15 U.S.C. § 1115).

Two decades later, the Ninth Circuit published Applied Info. Scis. Corp. v. eBAY, Inc. "to clarify what an owner of a federally registered trademark needs to establish in order to mount

---

[2] 15 U.S.C. § 1115(a) states in pertinent part that ""Any registration issued ... shall be prima facie evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the registration subject to any conditions or limitations stated therein ....")

an infringement action against a user of the trademarked name on goods or services that are not the same as those specified in the owner's trademark registration." 511 F.3d at 968. The court confirmed that "a registered trademark holder's protectable interest is limited to those goods or services described in its registration," but clarified that "the scope of validity and the scope of relief for infringement are not coextensive. Although the *validity* of a registered mark extends only to the listed goods or services, an owner's *remedies* against confusion with its valid mark are not so circumscribed." Id. at 970-971 (emphasis in original). Because the language of 15 U.S.C. § 1114 "does not limit remedies for allegedly infringing uses to those goods within the ambit of registration," the Ninth Circuit clarified that "a trademark owner may seek redress if another's use of the mark on different goods or services is likely to cause confusion with the owner's use of the mark in connection with its registered goods." Id. at 971 (citing 15 U.S.C. § 1114(a).)[3] The court emphasized that its refusal to allow the plaintiff in Levi Strauss to extend its *own* use of its registered mark to goods not specified in its federal registration is distinguishable from the scope of relief afforded by registration when another's use of the infringed mark is likely to cause confusion with the trademark holder's use in connection with its registered goods. Id. at 971-72 (emphasis in original).

Here, MNI argues PIV's trademark infringement counterclaim is pleaded akin to the infringement claim in Levi Strauss because PIV is attempting to extend the validity of its registration for mouth wash to include its own synthetic urine, which is not a registered good in connection with either the '069 or '938 Mark. (Mot. at 4.) Specifically, PIV alleges within its first amended counterclaim that "MNI's Unauthorized [synthetic urine] is a rip off and copy of PIV's synthetic urine product [that] MNI purchased from PIV." (Id. ¶ 36.) Without a registered trademark in connection with synthetic urine, however, allegations that MNI's synthetic urine is a copy of PIV's synthetic urine are not relevant to PIV's federal trademark infringement

---

[3] 15 U.S.C. § 1114 states in pertinent part that "[a]ny person who shall, without the consent of the registrant ... (a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of *any goods or services* on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive ... shall be liable in a civil action by the registrant for the remedies hereinafter provided." (Emphasis added.)

1  counterclaim.[4]  The inclusion of such allegations therefore lends credence to the interpretation

2  that PIV is attempting to expand its own use of the Magnum Detox Marks to synthetic urine.

3  Given its federal registrations are in connection with mouth wash only, the Court agrees that PIV

4  cannot rely on the statutory presumption that it owns and has the right to use the Magnum Detox

5  Marks in connection with goods other than mouth wash.

6      PIV argues its counterclaim is not within the ambit of Levi Strauss because PIV is not

7  attempting to extend its own use of the Magnum Detox Marks to its synthetic urine.  Rather, PIV

8  contends that MNI's use of the Magnum Detox Marks on its synthetic urine infringes on PIV's

9  use of the Marks on its mouth wash because it causes confusion.  "Where…a plaintiff bases its

10  trademark infringement claim upon the confusion the defendant's use will create for the

11  plaintiff's use of its mark in connection with its own registered goods or services, that claim

12  comes within the scope of its protectable interest."  Applied Info., 511 F.3d at 972.  Thus, for

13  PIV's trademark infringement counterclaim to come within the scope of its protectable interest in

14  mouth wash, PIV must *base* its counterclaim upon the confusion MNI's use of the Magnum

15  Detox Marks on MNI's synthetic urine will create for PIV's use of the Marks in connection with

16  its mouth wash.

17      The Court finds PIV fails to sufficiently allege that MNI's use of the Magnum Detox

18  Marks causes confusion specifically with PIV's use of the Magnum Detox Marks in relation to

19  its mouth wash.  PIV generally alleges in its first counterclaim that "MNI's unauthorized sale of

20  products bearing the [Magnum Detox Marks] is likely to cause confusion, cause mistake, or

21  deceive customers because it suggests that the products MNI offers are genuine, associated with,

22  sponsored by, or originate from PIV, when, in fact, they are not and do not."   (Am.

23  Countercompl. ¶ 36.)   Then, following the allegation that "MNI's [synthetic urine] is a rip off

24  and copy of PIV's synthetic urine product MNI purchased from PIV," PIV alleges that its saliva

---

[4] The Court notes that "[t]here are three ways in which [PIV] could have established it had a protectable interest: (1) it has a federally registered mark in goods or services; (2) its mark is descriptive but has acquired a secondary meaning in the market; or (3) it has a suggestive mark, which is inherently distinctive and protectable."  Applied Info., 511 F.3d at 969–70.  Here, PIV only argues it has sufficiently alleged that it has a protectable trademark right because it owns the '069 and '938 Marks.  (Opp'n 3.)  Because PIV does not argue that its Magnum Detox Marks have acquired secondary meanings in the market or are distinctive, the Court ends its inquiry at ownership of a federally registered mark.

cleansing mouth wash is included in the Magnum Detox brand of products. (Id. ¶¶ 14, 36.) As alleged, PIV fails to clearly base its trademark infringement counterclaim on the confusion MNI's use of the Magnum Detox Marks on its synthetic urine will create on PIV's use of the Magnum Detox Marks on its mouth wash. Given PIV concurrently alleges an extension of its own use of the Magnum Detox Marks to its synthetic urine, the Court declines to accept a strained reading of PIV's federal infringement counterclaim to establish a valid, protectable interest predicated on PIV's federal registrations for mouth wash.

Accordingly, insofar as PIV's counterclaim for federal trademark infringement attempts to extend PIV's federal registrations to synthetic urine or detox products generally, the Court finds that PIV cannot rely on its registered Magnum Detox Marks to establish the first element of its trademark infringement counterclaim. Without clear allegations that MNI's use of the Magnum Detox Marks on its synthetic urine is likely to cause confusion with PIV's presumptively valid interest in its mouth wash bearing the Magnum Detox Marks, the Court finds that PIV has not clearly alleged that it has a valid and protectable trademark for MNI to infringe upon.

        2.    <u>Likelihood of Confusion</u>

If PIV can sufficiently allege a valid trademark, whether that protected interest was infringed then becomes a question of likelihood of confusion. <u>Applied Info.</u>, 511 F.3d at 973. MNI maintains that, even if PIV could sufficiently plead a protectable trademark, the Court should dismiss PIV's countercomplaint without leave to amend because PIV cannot plead any facts that could plausibly suggest a likelihood of confusion between MNI's use of the Magnum Detox Marks on its synthetic urine and PIV's use of the Marks on its mouth wash.

"The likelihood of confusion is the pivotal element of trademark infringement and the issue can be…cast as the determination of whether the similarity of the marks is likely to confuse customers about the source of the products." <u>Robinson v. Hunger Free Am., Inc.</u>, No. 1:18-CV-00042-LJO-BAM, 2018 WL 1305722, at *4 (E.D. Cal. Mar. 13, 2018) (quotations and citations omitted). "The confusion must 'be probable, not simply a possibility.' " <u>Multi Time Mach., Inc. v. Amazon.com, Inc.</u>, 804 F.3d 930, 935 (9th Cir. 2015) (quoting <u>Murray v. Cable NBC</u>, 86 F.3d

858, 861 (9th Cir. 1996)). The Ninth Circuit recognizes an eight-factor test, established in <u>AMF, Inc. v. Sleekcraft Boats</u>, 599 F.2d 341 (9th Cir. 1979), <u>abrogated on other grounds by</u> <u>Mattel, Inc. v. Walking Mountain Prods.</u>, 353 F.3d 792 (9th Cir. 2003), to determine whether a another's use of a mark is likely to confuse consumers. The "<u>Sleekcraft</u> factors" are (1) the strength or distinctiveness of the mark; (2) the proximity or relatedness of the goods; (3) the similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) types of goods and degrees of care likely to be exercised by the purchaser; (7) defendant's intent in selecting its mark; and (8) the likelihood of expansion into other markets. 599 F.2d at 348. "The factors are non-exhaustive and applied flexibly; the <u>Sleekcraft</u> factors are not intended to be a 'rote checklist.' " <u>JL Beverage Co., LLC v. Jim Beam Brands Co.</u>, 828 F.3d 1098, 1106 (9th Cir. 2016) (quoting <u>Rearden LLC v. Rearden Commerce, Inc.</u>, 683 F.3d 1190, 1209 (9th Cir. 2012)). <u>See also</u> <u>Brookfield Commc'ns v. West Coast Entm't Corp.</u>, 174 F.3d 1036, 1054 (9th Cir. 1999) ("Some factors are much more important than others, and the relative importance of each individual factor will be case-specific").

Here, MNI only argues that PIV's amended countercomplaint fails to allege any facts that show the relatedness between mouth wash and synthetic urine. (Reply 5.) "Goods…are related when they are complementary, sold to the same class of purchasers, or similar in use and function." <u>Ironhawk Techs., Inc. v. Dropbox, Inc.</u>, 2 F.4th 1150, 1163 (9th Cir. 2021). "Related goods are those 'which would be reasonably thought by the buying public to come from the same source if sold under the same mark.' " <u>Rearden</u>, 683 F.3d at 1212 (quoting <u>Sleekcraft</u>, 599 F.2d at 348 n.10). MNI avers that "[i]t defies logic" to allege that mouth wash and synthetic urine are related and that it similarly "defies common sense that a typical consumer of mouth wash would be a typical consumer of synthetic urine." (Reply 5.) MNI argues "it is well known that mouth wash is sold in super markets, drug stores, and many department stores in the oral hygiene section along with toothpaste and toothbrushes. However, it taxes one's imagination as to where synthetic urine is sold and for what purpose." (<u>Id.</u>)

The Court finds MNI's incredulousness to be specious. PIV does not allege its mouth wash is for the typical consumer that is shopping in supermarkets, drug stores, and department

stores in search of prototypical mouth wash for typical oral hygiene. PIV alleges its "Magnum Detox Saliva-Cleansing Mouth Wash" is sold on its website and to retailers and wholesalers throughout the United States to be "used by purchasers to provide clean samples for tests for substances." (Am. Countercompl. ¶¶ 14, 36, 47.) PIV also alleges that MNI's synthetic urine bearing the Magnum Detox Marks, which MNI allegedly sells on its website and to retailers and wholesalers throughout the United States, "is used by purchasers to provide clean urine samples for tests for substances." (Id. ¶¶ 20, 27 36, 47.) Accepting these facts as true, it is plausible that a consumer searching for a cleansing mouth wash to provide a clean sample for a mouth swab drug test would be in the same class of purchaser searching for synthetic urine to provide a clean sample for a urine drug test. As noted by MNI, determining whether a complaint states a plausible claim is a "context-specific task." Id. at 679. In the context of the unique products at issue in the instant case, the Court finds PIV has plausibly alleged that its "Magnum Detox Saliva-Cleansing Mouth Wash" and MNI's synthetic urine are related goods because they are sold to the same class of purchasers, are similar in function, and would reasonably be thought by consumers to come from the same source when sold bearing the same marks.

Finding PIV has plausibly alleged its mouth wash and MNI's synthetic urine are related, the Court turns to PIV's unilateral argument regarding the remaining Sleekcraft factors. The Court finds that PIV has sufficiently alleged facts that show that several Sleekcraft factors are plausible at this early pleadings stage. The Court notes that in deciding a motion to dismiss for failure to state a claim, the Court only considers whether PIV has made a plausible allegation that would entitle PIV to relief if later proven to be true. Starr, 652 F.3d at 1216. Thus, while MNI likely disputes PIV's allegations contained in its amended countercomplaint, the Court must construe the alleged facts in the light most favorable to PIV and accept all well-pleaded allegations as true. Cahill, 80 F.3d at 337–38.

The Court finds PIV has sufficiently alleged facts supporting the third Sleekcraft factor, similarity of the marks. "[The greater the degree of similarity between the two marks at issue, the greater the likelihood of confusion." GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1206 (9th Cir. 2000). "[F]irst, the marks must be considered in their entirety and as they appear

in the marketplace; second, similarity is adjudged in terms of appearance, sound, and meaning; and third, similarities are weighed more heavily than differences."  Id. (internal citations omitted).  PIV alleges the Magnum Detox Marks appear in the marketplace on its own detox products and on MNI's synthetic urine.  (Am. Countercompl. ¶¶ 14, 20.)   In its counterclaim, PIV supplies a photograph of its Magnum Detox – Saliva Cleansing Mouth Wash, which has a white stylized '938 Mark clearly illustrated on the label.  (Id. ¶ 14.)  PIV also provides a photograph of MNI's packaging of its synthetic urine, which includes a black stylized '938 Mark on the product's box.  (Id. ¶ 20.)  Accordingly, PIV sufficiently alleges that aside from the color, the two marks are identical.

As to the fourth factor regarding evidence of actual confusion by consumers, PIV alleges that because MNI's synthetic urine's product packaging displays PIV's website and phone number, customers have contacted PIV about MNI's synthetic urine believing the product was manufactured by PIV.  (Id. ¶ 37.)  Notably, the importance of this factor is diminished during the early stages of the proceedings, given evidence of actual confusion is rarely available.  See Network Automation, Inc. v. Advanced Sys. Concepts, Inc., 638 F.3d 1137, 1151 (9th Cir. 2011).  Thus, at this non-evidentiary stage, the Court finds PIV has sufficiently pleaded it has actual evidence of consumer confusion.

In assessing the fifth Sleekcraft factor—marketing channel used—"courts consider whether the parties' customer bases overlap and how the parties advertise and market their products." Pom Wonderful, 775 F.3d at 1130.  "Marketing channels can converge even when different submarkets are involved so long as 'the general class of ... purchasers exposed to the products overlap.' " Id. (quoting Sleekcraft, 599 F.2d at 353).  As previously addressed in the "relatedness" factor, PIV has sufficiently alleged the general class of purchasers exposed to its mouth wash and MNI's synthetic urine overlap.  Further, PIV generally alleges that MNI's synthetic urine "is sold in the same channels, on the same websites, and to the same relevant consumers as PIV's Magnum Detox products," which includes PIV's saliva-cleansing mouth wash. (Am. Countercompl. ¶ 36.)  Specifically, PIV alleges it sells its Magnum Detox products online and to wholesalers and retailers in California and throughout the United States.  (Id. ¶ 7.)

1   PIV alleges MNI similarly sells its synthetic urine online and directly to wholesalers and retailers

2   in California, Texas, and throughout the United States.  (Id. ¶ 28.)  Accordingly, the Court finds

3   PIV has sufficiently alleged facts to plausibly support the fifth Sleekcraft factor.

4        PIV also summarily alleges it sufficiently pleaded facts supporting the seventh factor,

5   that MNI had a deliberate and malicious intent in selecting the Magnum Detox Marks.  "This

6   factor favors the trademark holder where the alleged infringer adopted his mark with knowledge,

7   actual or constructive, that it was another's trademark.  Ironhawk Techs., Inc., 2 F.4th at 1167

8   (quotations and citations omitted).  PIV alleges that from 2005 to 2017, PIV and MNI had a

9   continuing business relationship wherein MNI distributed PIV's Magnum Detox products.  (Am.

10  Countercompl. ¶ 17.)  While PIV does not allege MNI distributed PIV's saliva-cleansing mouth

11  wash, PIV sufficiently alleges, based both on PIV's and MNI's twelve-year business relationship

12  and the fact that MNI's synthetic urine lists PIV's contact information, that MNI adopted the

13  '938 Mark on its synthetic urine with actual knowledge that it was PIV's trademark.  PIV also

14  alleges that MNI's use of the Magnum Detox Marks on its synthetic urine is driven by its attempt

15  to trade off on PIV's goodwill.  (Id. ¶ 26.)  The Court thus finds PIV has plausibly alleged MNI's

16  intent in selecting the Magnum Detox Marks on its synthetic urine.[5]

17       Based on the sum of the Sleekcraft factors, the Court finds PIV has plausibly alleged a

18  likelihood of consumer confusion.  However, because PIV fails to sufficiently allege it has a

19  valid, protectable mark, the Court recommends granting MNI's motion to dismiss PIV's first

20  counterclaim for federal trademark infringement with leave to amend.

21       **B.    PIV's Counterclaim for False Designation of Origin**

22       Where 15 U.S.C. § 1114(1) provides protection to infringement of registered trademarks,

23  15 U.S.C. 1125 provides protection against infringement of both registered and unregistered

24  trademarks.  See Brookfield Commc'ns, Inc., 174 F.3d at 1047 n.8.  "A claim for false

25

---

26  [5] PIV also summarily argues it has alleged sufficient facts to support the eighth Sleekcraft factor regarding likelihood expansion of the product lines.  PIV cites its allegation that "[o]ne of PIV's Magnum Detox branded products was a product for synthetic urine bearing the MAGNUM DETOX Marks...." (Am. Countercompl. ¶ 18.)

27  However, "the likelihood of expansion in product lines factor is relatively unimportant where two companies already compete to a significant extent."  Brookfield Commc'ns, Inc., 174 F.3d at 1060.  Thus, the Court does not

28  find PIV's arguments in relation to the eighth factor to be informative in determining this motion to dismiss.

designation of origin under 15 U.S.C. § 1125 requires proof of the same elements as a claim for trademark infringement under 15 U.S.C. § 1114," including ownership of a valid, protectable trademark.  Monster Energy Co. v. BeastUp LLC, 395 F. Supp. 3d 1334, 1350 (E.D. Cal. 2019) (citing Brookfield Comm'ns, Inc., 174 F.3d at 1046 n.6).

Here, the Court finds PIV failed to sufficiently plead a designation of origin claim based on its *registered* Magnum Detox Marks for the same reasons PIV failed to allege a valid trademark in its federal trademark infringement counterclaim.  However, at the hearing held in this matter on January 17, 2024, PIV clarified that PIV's second counterclaim was pleaded in the alternative, meaning PIV's second counterclaim is intended to also allege a claim for false designation of origin for PIV's alleged common law rights to the *unregistered* Magnum Detox mark, for use on all PIV detox products separate from its registered Magnum Detox Marks for mouth wash.  MNI argued PIV fails to sufficiently state a claim for common law rights to the unregistered Magnum Detox Marks because PIV failed to sufficiently plead it is the senior user of the unregistered Magnum Detox marks or specify the geographical area in which PIV is asserting its rights.[6]

"[T]he statutory vehicle for a common law trademark infringement claim under federal law is the false designation of origin provision in § 1125(a)(1)(A).  So, a common law trademark infringement claim is not separate from a false designation of origin claim."  R Journey, LLC v. Kampgrounds of Am., Inc., No. CV 22-48-BLG-SPW, 2023 WL 2373352, at *9 (D. Mont. Mar. 6, 2023).  "In order to prevail on a Lanham Act false designation claim or a common law trademark infringement claim, a plaintiff must show that it owns a valid mark, that the mark was used without consent, and that such unauthorized use is likely to cause confusion, mistake, or

---

[6] As discussed at the hearing held in this matter, MNI's briefing falls far short of informing the Court of MNI's basis for its motion to dismiss PIV's second counterclaim.  Nowhere in either its motion or reply does MNI argue that PIV fails to allege facts sufficient to state its common law rights to the unregistered Magnum Detox marks.  At th hearing, MNI explained that MNI was unaware whether PIV's second counterclaim was asserting both a designation of origin claim for the registered Magnum Detox Marks in connection with mouthwash or common law rights to the unregistered Magnum Detox brand in connection with PIV's detox products.  Because PIV was given the opportunity to respond to MNI's unwritten arguments at the hearing and in the interests of expediency and preserving court resources, the Court will address the issue of whether PIV failed to sufficiently allege it has common law rights to the unregistered Magnum Detox marks separate from its registered trademarks in connection with mouth wash.  Should PIV elect to amend its countercomplaint, the Court encourages PIV to separate or clarify its alternative theories for its counterclaim for false designation of origin.

deception." Credit One Corp. v. Credit One Financial, Inc., 661 F. Supp. 2d 1134, 1137 (C.D. Cal. 2009).  In the absence of federal registration, a plaintiff must plead that it is the senior user of the mark and has sufficient market penetration to preclude the defendant from using the mark in a specific geographic market.  Hanginout, Inc., 54 F. Supp. 3d at 1118.  Seniority of use and market penetration are two independent determinations, and both must be sufficiently alleged in the absence of federal registration.  Id.; see also Optimal Pets, Inc. v. Nutri-Vet, LLC, 877 F. Supp. 2d 953, 958 (C.D. Cal. 2012) ("A party asserting common law rights must not only establish that it is the senior user, it must also show that it has legally sufficient market penetration in a certain geographic market to establish those trademark rights") (internal citation omitted).

The relevant inquiry as to PIV's alleged common law rights to the unregistered Magnum Detox marks is whether PIV has sufficiently pleaded it is the senior user of the Magnum Detox marks with sufficient market penetration to preclude MNI from using the marks in connection with synthetic urine in a specific geographic market.  See Hanginout, Inc., 54 F. Supp. 3d at 1118.

### 1.   Seniority of Use

MNI argues PIV fails to sufficiently allege it was the first to use the Magnum Detox marks.  "It is axiomatic in trademark law that the standard test of ownership is priority of use.  To acquire ownership of a trademark it is not enough to have invented the mark first or even to have registered it first; the party claiming ownership must have been the first to actually use the mark in the sale of goods or services."  Sengoku Works Ltd. v. RMC Int'l, Ltd., 96 F.3d 1217, 1219 (9th Cir. 1996).  "The first to use a mark is deemed the 'senior' user and has the right to enjoin 'junior' users from using confusingly similar marks in the same industry and market or within the senior user's natural zone of expansion."  Brookfield Commc'ns, Inc., 174 F.3d at 1047.

Accepting the allegations in PIV's countercomplaint as true, the Court finds PIV adequately alleges it is the senior user of the Magnum Detox marks.  By incorporating preceding allegations into its second amended counterclaim (Am. Countercompl. ¶ 43), PIV alleges that

since 2005, it has sold products, including, but not limited to, "saliva cleansing mouth wash," "16 oz 1 Hour System Cleaner," "32 Oz 1 Hour System Cleanser," "Instant Flush," "Soft Gel Caps," and "Synthetic Urine," bearing the Magnum Detox mark.  (Id. ¶¶ 14, 16-18.)   From approximately 2005 to 2017, MNI distributed PIV's Magnum Detox products bearing the Magnum Detox brand.  (Id. ¶ 17.)  PIV alleges MNI "now manufactur[es], distribut[es], and/or sell[s] unauthorized synthetic urine products…bearing the Magnum Detox Marks." (Id. ¶ 20.) Further, PIV alleges that "MNI has been aware of PIV since 2005 and knows it is not the owner of the Magnum Detox Marks."  (Id. ¶ 26.)  Construing PIV's allegations liberally in its favor, the Court finds PIV has sufficiently pleaded it has been using the Magnum Detox brands on its lifestyle, cleansing, and detox products continuously since 2005 and that MNI began selling its own synthetic urine bearing the same Magnum Detox brand after the parties' business relationship ended in 2017.  Accordingly, the Court finds PIV has sufficiently alleged that it is the senior user of the unregistered Magnum Detox marks in connection with its detox, cleansing, and lifestyle products.

### 2.   Market Penetration in a Specific Geographical Area

A senior user of a distinctive unregistered trademark is entitled to assert its trademark rights only in geographical areas in which it has legally sufficient market penetration.  Optimal Pets, Inc., 877 F. Supp. 2d at 959 (citing Glow Indus., Inc. v. Lopez, 252 F. Supp. 2d 962, 983 (C.D. Cal. Dec. 18, 2002)); see also FaceGym, Ltd. v. Skin Gym Inc., No. CV1909625CJCJEMX, 2020 WL 12028894, at *2 (C.D. Cal. Aug. 27, 2020) (noting when deciding a motion for preliminary injunction that sufficient market penetration is determined by "examining the trademark user's volume of sales and growth, number of persons buying the trademarked product in relation to the number of potential purchasers, and the amount of advertising" in a given market).

MNI argues that PIV fails to sufficiently allege which specific geographical area it asserts its common law rights to the use of the unregistered Magnum Detox brand.  The Court agrees. In its amended countercomplaint, PIV alleges that it "actively uses, advertises, and markets its Magnum Detox Marks in commerce throughout the United States" and "sells its products online

on its website…and to wholesalers and retailers throughout California and the United States." (Am. Countercompl. ¶¶ 7, 15).  PIV also generally alleges that "PIV and its Magnum Detox brand is widely recognized as the source of products bearing the Magnum Detox Marks."  (Id. ¶ 16.)  However, PIV fails to specify whether it asserts its rights to the unregistered Magnum Detox mark in a limited geographic area or if it is asserting national reach "throughout the United States."  See Hanginout, Inc., 54 F. Supp. 3d at 1136 (denying a motion to dismiss where the purported trademark owner sufficiently alleged that it "achieved market penetration through the United States and, at a minimum, in California," noting "the Court must take these facts as true and leave for a later date the determination of whether [the owner] will be able to support such facts with the necessary evidence"); R Journey, LLC, 2023 WL 2373352, at *10 (denying a motion to dismiss where the counterclaimant made a plausible claim that its "unregistered marks carry a national reputation that protects them from infringers" because it sufficiently alleged it had used its unregistered marks "in 43 states and Canada for the last 10 years on signs…, ads, promotional material, and social media").  Accordingly, the Court finds PIV failed to sufficiently define the geographical scope of its rights to the unregistered marks.[7]

Given PIV fails to sufficiently allege that it has a valid and protectable interest in its registered trademark in connection with any product other than mouth wash, the Court recommends granting MNI's motion to dismiss PIV's counterclaim for false designation of origin as to PIV's registered trademarks for mouth wash with leave to amend.  Additionally, because PIV fails to sufficiently allege it has common law rights to the unregistered Magnum Detox marks, the Court recommends granting MNI's motion to dismiss PIV's counterclaim for false designation of origin as to PIV's use of the unregistered marks with leave to amend.

## C.    The Court Recommends Granting Leave to Amend PIV's First and Second Counterclaims.

Under Rule 15(a), leave to amend "shall be freely given when justice so requires," because "the court must remain guided by the underlying purpose of Rule 15 … to facilitate

---

[7] Upon establishing a valid, protectable trademark, the likelihood of confusion element in a false designation of origin claim involves the same standard and application of the same eight Sleekcraft factors as that in a federal trademark infringement claim.

1  decisions on the merits, rather than on the pleadings or technicalities." <u>Lopez v. Smith</u>, 203 F.3d

2  1122, 1127 (9th Cir. 2000) (en banc) (alterations and internal quotation marks omitted).

3  Nevertheless, a district court need not grant leave to amend where the amendment would unduly

4  prejudice the opposing party, cause undue delay, or be futile, or if the party seeking amendment

5  has acted in bad faith. <u>Leadsinger, Inc. v. BMG Music Publ'g</u>, 512 F.3d 522, 532 (9th Cir. 2008)

6  (citing <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962)).  "The decision of whether to grant leave to

7  amend nevertheless remains within the discretion of the district court." <u>Id.</u>

8       The Court finds PIV has not acted in bad faith and it would not prejudice MNI or be futile to

9  grant another opportunity to cure deficiencies in PIV's first amended countercomplaint.  The Court

10  therefore recommends that PIV be granted leave to amend its first amended countercomplaint to

11  address the deficiencies in his first and second counterclaims, as noted in these findings and

12  recommendations.

13  **V.**

14  **RECOMMENDATION AND ORDER**

15       For the foregoing reasons, IT IS HEREBY RECOMMENDED that Plaintiff Mike's

16  Novelties, Inc.'s motion to dismiss Defendant PIV Enterprises, Inc.'s first counterclaim for

17  federal trademark infringement and second counterclaim for false designation of origin based on

18  its registered federal trademarks, and, in the alternative, its common law rights to the

19  unregistered "Magnum Detox" mark be GRANTED with leave to amend.

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304. Within **fourteen (14) days** of service of these recommendations, the parties may file written objections to the findings and recommendations with the Court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The District Judge will review the Magistrate Judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: __**February 6, 2024**__

UNITED STATES MAGISTRATE JUDGE